IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-CR-235-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  CHRISTOPHER FASSIH,

    Defendant.

## GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K2.13

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully requests that the Court depart from the defendant's Guidelines range and sentence him to time served to be followed by three years of supervised release.

### Facts

As outlined in the presentence investigation report ("PSR") [ECF #45] and the complaint affidavit filed on July 7, 2021 [ECF #1-1], on or about July 5, 2021, the defendant, who was in Colorado, made numerous telephone bomb threats to police stations around the country. Each call was similar in that the defendant stated, in sum and substance, that he was going to blow up the police station if certain demands were not met.

Specifically, the defendant placed phone calls to three district stations in Boston, Massachusetts; three district stations in Cleveland, Ohio; two district stations in

Washington, D.C.; a police station in Miami, Florida; and police stations in Pittsburgh, Pennsylvania. [PSR ¶ 14-18]. The stations responded in various ways, including conducting bomb sweeps, evacuating personnel, and closing surrounding public roads. [PSR ¶ 14-18]. No explosives were located; each recipient station, however, treated the threat as a true threat.

After receiving one of these calls, the Washington D.C. Metro Police Department ("MPD"), began investigating the source of the threats. Ultimately, an MPD detective (the "MPD Detective") traced the sources of the calls to the defendant, and attempted to speak with the defendant on the phone. The defendant texted the MPD Detective and the two engaged in a text conversation in which the defendant discussed making bomb threats and downloading child pornography because he was part of an international mafia group and wanted to extricate himself from that group. The defendant claimed that the only place he would be safe from the international mafia group would be if he was arrested and send to ADX Florence:

> I have limited moments to talk. Please help me. I'll tell you everything I know about the international mafia and the ghosts, if you'd keep me alive. I was supposed to become a ghost. They wanted me to sell crack cocaine to kids. They bragged about how they find people who have no friends or family so no one will miss them and they make them disappear, force them into prostitution / human sex trafficking, and take the money they make. The leader of the international mafia threatened to do that to me to my face, if I didn't cooperate. They're disgusting and evil. Please help me. I've been thinking of ways to save myself. They said if I went to prison, they'd dig a tunnel to where my cell is to get to me. I think my only chance is at the supermax ADX Florence… So I made like 60+ bomb threats to police stations across the country and I downloaded a ton of child pornography to my phone with Tor. Sorry. There's not much I can do on my own. I don't want to die and I don't deserve to.. if you'll keep me

>
> alive, I'll cooperate with anything you want. Top secret information, my whole experience, becoming an undercover informant, anything.

[PSR ¶ 19]. The defendant subsequently spoke with the MPD Detective on the phone and informed her that he was near a police station in Fort Collins, Colorado. The MPD Detective urged the defendant to turn himself in to police.

The next day, on July 6, 2021, the defendant came into contact with Fort Collins Police Department personnel, including a detective (the "Fort Collins Detective"). He told officers the same story that he told the MPD Detective—that he was involved in an international mafia and needed to go to "super max" to be safe. He also told officers that he is not a violent person and was attempting to commit crimes that would not hurt anyone. During this meeting, the defendant stated that he had downloaded child pornography on his phone, and showed the Fort Collins Detective his phone, which contained thumbnail-sized photographs of apparent child pornography. The defendant told the Fort Collins Detective that he is uninterested in child pornography, but he downloaded the materials in an effort to get arrested. [PSR ¶ 20-21].

The defendant was arrested and transported to a hospital for a mental health hold. [PSR ¶ 21]. He was interviewed on the way to the hospital and told officers again that he feared for his life. He said that he had been recruited by the international mafia and trained as a "ghost," which is a hitman. The defendant repeated that he needed to go to the ADMAX facility in Florence to be safe, which is why he came to Colorado to commit crimes. [PSR ¶ 21].

The defendant's cell phone was determined to contain approximately 25 screenshots of child pornography. [PSR ¶ 23].

Procedural History

The defendant was charged the instant case by criminal complaint dated July 7, 2021. [ECF #1]. He was arrested on July 9, 2021, and made his initial appearance in federal court that same day. [ECF #3-4]. Following a detention hearing on July 14, 2021, the defendant was ordered detained. [ECF #8]. The defendant was indicted in 12 counts on July 15, 2021. [ECF #11].

On November 10, 2021, the Court held a hearing to determine the defendant's competency to proceed. [ECF #30]. On November 17, 2021, the defendant was determined not competent to proceed within the meaning of 18 U.S.C. § 4241(a) and was ordered committed to the custody of the Attorney General for evaluation and treatment. [ECF #31]. Ultimately, on or about May 4, 2022, the defendant was determined to be restored to competency and competent to stand trial. [ECF #26].

The defendant pled guilty to Count One of the indictment pursuant to a plea agreement on July 20, 2022. [ECF # 42, 43].

Guidelines Calculation

The parties' plea agreement and the Probation Office's Guidelines calculation differ in two ways. First, the Probation Office applied U.S.S.G. § 1B1.2(c) because the "plea agreement contain[s] a stipulation that specifically establishes the commission of additional offense(s)." [PSR ¶ 28]. In drafting the plea agreement, the Government failed to take U.S.S.G. § 1B1.2(c) into account, but now believes that the Probation Office's calculation is correct.

Second, contrary to the parties' plea agreement, the Probation Office also adds +4 pursuant to U.S.S.G. § 2A6.1(b)(4)(A) because one of the threats involved a

substantial disruption of government functions or services, based on the MPD's response to that threat. [PSR ¶ 31]. The Government spoke with the Probation Office prior to the filing of the PSR and offered the view that whether +4 pursuant to U.S.S.G. § 2A6.1(b)(4)(A) applies in this case is a close call, and one on which reasonable minds could easily disagree. Accordingly, although the Government did not object to the PSR's inclusion of the enhancement, but the Government stands by its plea agreement on the applicability of this enhancement.

Accordingly, the Government believes the Guidelines calculation is as follows:

Count 1 (Washington, D.C. threats)
    Base offense level (U.S.S.G. § 2A6.1)                       12
    Multiple threats enhancement (U.S.S.G. § 2A6.1(b)(2)(A))    +2
    Adjusted offense level                                         14

Count 1A (Boston, MA threats)
    Base offense level (U.S.S.G. § 2A6.1)                       12
    Multiple threats enhancement (U.S.S.G. § 2A6.1(b)(2)(A))    +2
    Adjusted offense level                                         14

Count 1B (Miami, FL threat)
    Base offense level (U.S.S.G. § 2A6.1)                       12
    Adjusted offense level                                         12

Count 1C (Cleveland, OH threats)
    Base offense level (U.S.S.G. § 2A6.1)                       12
    Multiple threats enhancement (U.S.S.G. § 2A6.1(b)(2)(A))    +2
    Adjusted offense level                                         14

Multiple Count Adjustment

| Group/Count | Adjusted offense level | Units |
|---|---|---|
| Count 1 | 14 | 1.0 |
| Count 1A | 14 | 1.0 |
| Count 1B | 12 | 1.0 |
| Count 1C | 14 | 1.0 |
| Total Number of Units: | | 4.0 |

|  |  |
|---|---|
| Greater of the Adjusted Offense Levels: | 14 |
| Increase in Offense Level (U.S.S.G. § 3D1.4): | +4 |
| Combined Adjusted Offense Level: | 18 |
| Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a), (b)): | -3 |
| Total Offense Level: | 15 |

The defendant is in Criminal History Category I. Accordingly, at offense level 15, his Guidelines range is 18-24 months.

## Motion for Downward Departure

While the defendant's offense in this case was abhorrent and no doubt frightening and troublesome for the affected police departments and their staff, the Government agrees with the Probation Office that "[t]he defendant truly believed his delusions about a mafia being after him and that the only safe place for him would be in custody." [PSR Ex. A]. Accordingly, and based on all of the facts and circumstances of the case, it is the Government's view that "the defendant committed the offense while suffering from a significantly reduced mental capacity" and "the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. A downward departure to time served (amounting to approximately 15 months in custody) to be followed by three years of supervised release is an appropriate sentence here.

The Probation Office recommends a sentence of five years' probation instead of supervised release. While the Probation Office has sound reasons for its recommendation—including, importantly, maximizing the time that the defendant can be supervised—the Government stands by its plea agreement.

Whether the court imposes a sentence of supervised release or probation, however, it is clear that the defendant will require intensive supervision for a lengthy period of time.  To that end, the Government agrees that the Probation Office's recommended special conditions are appropriate, with the exception of sex offense-specific treatment.  The defendant did download child pornography onto his phone, but it is the Government's view that the defendant's motivation was not sexual, but rather an attempt to commit a crime that the defendant believed was serious enough to cause him to be incarcerated at ADX Florence, but one that would not cause any harm.  Of course, the law punishes child pornography offenses harshly precisely because consumers of the material do, in fact, cause continued harm to the victims.  Here, however, there does not appear to be a deviant motivation for obtaining the materials so the Government agrees with the defendant that such a condition is not appropriate here.  [ECF #46].

Ultimately, the defendant was, and is, a troubled young man who committed serious federal crimes because of a genuinely-held delusion about his own physical safety.  Sometimes, when the criminal justice system encounters the mentally ill, there is no choice but to arrest and prosecute, both for the safety of the community and the safety of the individual.  This was one of those cases.  While it is not yet certain how the defendant will fare out of custody, it is clear that additional incarceration—at least at this juncture—is not the solution.  With the expert supervision of the Probation Office, and the support of his family, it is the Government's hope that the defendant can eventually live a productive, law-abiding life.

Sentencing Recommendation

It is the Government's view that a sentence of time served to be followed by

three years of supervised release is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted this 4th day of October, 2022.

                                            COLE FINEGAN
                                            United States Attorney

By:    *s/ Andrea Surratt*
        Andrea Surratt
        Assistant United States Attorney
        U.S. Attorney's Office
        1801 California St., Suite 1600
        Denver, CO 80202
        Telephone: (303) 454-0100
        e-mail:  Andrea.Surratt@usdoj.gov
        Attorney for the Government